# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA
# TULSA DIVISION

| | | |
|---|---|---|
| COURTNIE ARNOLD, ET AL., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | § | |
| | § | |
| *Plaintiffs*, | § | Case No. 4:16-cv-00328-GKF-PJC |
| | § | |
| v. | § | Judge: Gregory K. Frizzell |
| | § | Magistrate Judge: Paul J. Cleary |
| GENGHIS GRILL, ET AL., | § | |
| | § | ***JURY TRIAL DEMANDED*** |
| *Defendants*. | § | |

## PLAINTIFF COURTNIE ARNOLD'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

Plaintiff, Courtnie Arnold, by and through the undersigned counsel, and pursuant to Local Civil Rule 7.2(c) and (e), files her Opposition to Defendants' Motion to Compel Arbitration. For the reasons set forth herein, Defendants' Motion to Compel Arbitration should be denied without prejudice pending discovery and a jury trial on the issue of whether there is a valid arbitration agreement here. Additionally, Plaintiff Arnold requests that ruling on Defendants' Motion to Compel Arbitration be stayed pending ruling on Plaintiffs' Motion for Conditional Certification and notice being given to all similarly-situated persons pursuant to that motion.

### I. BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Courtnie Arnold filed this hybrid FLSA collective and class action on June 2, 2016. ECF No. 2. Plaintiff Arnold's initial Complaint alleged four types of wage and hour violations – 1) unlawful use of tip-pool proceeds; 2) tip-credit violations of 20% rule; 3) tip-credit violations for unrelated tipped work; and 4) failure to pay minimum wage due to "off-the-clock" work. *See generally*, ECF No. 2 at ¶¶ 43-80. Defendants filed Answers to the original Complaint on July 1, 2016. ECF Nos. 35-42.

On July 13, 2016, Defendants Genghis Grill Franchise Concepts, LP, Chalak-M&M OK1, LLC and Chalak-M&M OK2, LLC, Chalak-M&M OK3, LLC, Chalak-M&M OK4, LLC, Akash Bhakta, Chetan Bhakta, and Ronak Parikh filed the currently pending Motion to Compel Arbitration. ECF No. 51. Defendants assert that Plaintiff Arnold must be compelled to arbitration pursuant to a Mutual Arbitration Agreement (the "MAA") allegedly entered into by Plaintiff Arnold, which is submitted with Defendants' motion, in addition to an affidavit from Nancy Jacob. ECF No. 51-1.

On August 1, 2016, after Defendants' Motion to Compel was filed, Plaintiff filed a motion to amend the complaint. Importantly, in the proposed First Amended Collective Action Complaint, a second Plaintiff – Jamelynn Halley – is named. The First Amended Complaint also alleges, *inter alia*, the same four types of violations identified above, occurring not only at two Tulsa, Oklahoma Genghis Grill restaurants, but also occurring at a Genghis Grill restaurant in Shreveport, Louisiana. *See*, ECF No. 54-1. On the same day, Plaintiff Arnold and Opt-In Plaintiff Halley filed their Motion for Conditional Class Certification and supporting documents. *See*, ECF Nos. 55 and 56.

## II. LEGAL STANDARD

### A. THE FEDERAL ARBITRATION ACT PROVIDES FOR A JURY TRIAL WHEN THE EXISTENCE OF A VALID ARBITRATION AGREEMENT IS SUBJECT TO MATERIAL FACTUAL ISSUES.

Plaintiff Arnold does not dispute Defendants' contention that "[w]here, as here, a plaintiff attempts to litigate claims that fall within the scope of an arbitration agreement, a defendant may move to compel arbitration." ECF No. 51 at p. 4 *citing* 9 U.S.C. § 3. However, as explained by the Tenth Circuit:

> Everyone knows the Federal Arbitration Act favors arbitration. **But before the Act's heavy hand in favor of arbitration swings into play, the parties themselves must *agree* to have their disputes arbitrated.** While Congress has chosen to preempt state laws that aim to channel disputes into litigation rather than arbitration, even under the FAA it remains a "fundamental principle" that "arbitration is a matter of contract," not something to be foisted on the parties at all costs. *AT & T Mobility LLC v. Concepcion,* ––– U.S. ––––, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011).

*Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) (italics in original, bold emphasis added), *see also*, *Quazilbash v. Wells Fargo & Co.*, 09-CV-0652-CVE-FHM, 2010 WL 1643778, at *1 (N.D. Okla. Apr. 22, 2010) (*citing Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior Gulf & Nav. Co.,* 363 U.S. 574, 582 (1960))) ("[a]greements to arbitrate are matters of contract, and 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'").

To this end, the Federal Arbitration Act (the "Act") provides a procedure for resolving disputed issues regarding the making of an arbitration agreement, which involves a trial by the district court or**,** if demanded, a jury trial. *Walker v. BuildDirect.com Techs., Inc.*, 11-CV-800-D, 2012 WL 4482060, at *2 (W.D. Okla. Sept. 28, 2012), *aff'd*, 604 Fed. Appx. 792 (10th Cir. 2015) (emphasis added). Further, the Tenth Circuit has made clear "[w]hen parties dispute the making of an agreement to arbitrate, a jury trial on the existence of the agreement is warranted unless there are no genuine issues of material fact regarding the parties' agreement." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir.1997) (emphasis added).

"District courts within the Tenth Circuit apply a standard similar to that governing motions for summary judgment to disputes over whether the parties have agreed to arbitrate." *Quazilbash*, 2010 WL 1643778, at *1 (citation omitted).

Therefore, procedurally, this standard results in a burden-shifting process whereby the moving party must make a showing to present evidence sufficient to demonstrate an enforceable arbitration agreement. Then, if the non-movant raises a genuine issue of fact as to the existence of an arbitration agreement, the issue must be submitted to a jury. *Quazilbash*, 2010 WL 1643778, at *1, *see also SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1263 (D. Kan. 2003) (ordering that "defendant's motion to dismiss plaintiff's complaint and compel arbitration or, in the alternative, to transfer the case to the United States District Court for the Northern District of Georgia (doc. # 3)

is **retained under advisement** until such time as a jury resolves the issue of whether an agreement to arbitrate was made") (emphasis in original order).

**B. THE EXISTENCE OF A CONTRACT IS GOVERNED BY OKLAHOMA LAW.**

Regarding the MAA's choice-of-law provision, Plaintiff Arnold agrees that *if* the MAA is found to be valid and enforceable, Texas law governs. However, where contract formation is challenged, and therefore the very existence of the alleged contract is at issue, state law contract principles (here, Oklahoma law) apply when determining if the alleged contract was formed. *See*, Okla. Stat. Ann. tit. 15, § 162, *Harvell v. Goodyear Tire and Rubber Co.,* 164 P.3d 1028, 1033-34 (Okla .2006) ("[I]n Oklahoma, the established choice of law rule in contract actions known as *lex loci contractus* is that, unless the contract terms provide otherwise, the nature, validity, and interpretation of a contract are governed by the law where the contract was made.") At least one Court in this District has interpreted § 162 and *Harvell* when analyzing issues of contract formation. *Crosby Group, Inc. v. Taylor Crane & Rigging, Inc.*, 08-CV-0254-CVE-FHM, 2008 WL 5083623, at *2 (N.D. Okla. Nov. 26, 2008). Specifically, the *Crosby Group* Court made clear that when "the issue is contract formation, not nature, validity, or interpretation" and "[t]he contract was entered into in Oklahoma for work to be performed in Oklahoma … the Court will apply Oklahoma law to determine whether a contract exists and, if so, which terms are included." 2008 WL 5083623 at *2, n.5 (emphasis added). Accordingly, here, Oklahoma contract law applies.

**C. ELEMENTS OF CONTRACT UNDER OKLAHOMA LAW**

"State law principles of contract formation govern whether a valid arbitration agreement exists, and resolution of [the parties'] arguments requires examination of Oklahoma law, which recognizes the essential elements of offer, acceptance and consideration." *Hancock v. Am. Tel. & Tel. Co., Inc.*, 10-CIV-822-W, 2011 WL 3626785, at *6 (W.D. Okla. Aug. 11, 2011), *aff'd*, 701 F.3d 1248 (10th Cir. 2012).

## III. Argument

There are two reasons why Defendants' motion must be denied: 1) Defendants have failed to meet their burden establishing that Plaintiff Arnold accepted the MAA via an alleged electronic signature, and, at least, Plaintiff Arnold raises material issues of fact, triggering the jury trial provision of the Act, 9 U.S.C. § 4; and 2) in any event, to conserve judicial resources, any ruling or order on Defendants' Motion to Compel Arbitration should be stayed pending this Court's ruling or order on Plaintiffs' Motion for Conditional Class Certification. Each point is addressed in turn.

### A. Plaintiff Arnold's Declaration Supports a Finding that She Did Not Accept to the MAA, or At a Minimum, Material Issues of Fact Exist, a Jury Trial Has Been Demanded, and, Therefore, a Jury Must Decide Whether or Not a Valid Arbitration Agreement Exists Here.

Multiple courts have considered and addressed the issue of whether an electronic signature is sufficient to show, without material issue, that a plaintiff accepted an arbitration agreement. Many courts, including this Court, have found that where an electronic signature is used, and where the defendant cannot conclusively establish that the plaintiff was the person who "e-signed" the arbitration agreement, the issue of formation of the arbitration agreement must be submitted to a jury for summary trial of that issue.

In *Gonzales v. J.C. Penney Corp., Inc.*, on reconsideration of its earlier decision, this Court found that there were material issues of fact about whether an arbitration agreement was signed. *Gonzales v. J.C. Penney Corp., Inc.*, 13-CV-86-GKF-TLW, 2013 WL 3408227, at *2 (N.D. Okla. July 8, 2013). Specifically, this Court ordered that a hearing on whether the plaintiff signed the arbitration agreement was required where the plaintiff asserted that she: 1) remembered doing new-hire paperwork; 2) denied electronically signing documents; 3) denied agreeing to the arbitration agreement; and averred that the manager standing next to plaintiff could see plaintiff's employee I.D. *Id.* and *Gonzales*, 13-CV-86-GKF-TLW, ECF Nos. 29-1, 29-2. Thus, because the plaintiff's acceptance of the arbitration agreement was disputed, and material issues of fact existed regarding

whether or not the plaintiff did electronically sign – and therefore accept – the arbitration agreement, the Court correctly concluded that further development and hearing of the issue was required. *Id.*

Another instructive case is *Brent v. Priority 1 Auto. Group, BMW of Rockville*, 98 F. Supp. 3d 833 (D. Md. 2015). In *Brent*, similar to *Gonzales*, the plaintiff challenged an alleged arbitration agreement's acceptance via electronic signature. *Id.* The *Brent* court was faced with competing affidavits regarding whether the plaintiff did in fact electronically sign the arbitration agreement, as alleged by the defendant, and the plaintiff laid out what discovery would be necessary to ensure that the plaintiff's alleged signature was authentic. *Id.* at 836-38. Based on this, the Court reasoned:

> Plaintiff's acceptance of the Arbitration Agreement is a material fact. On the record before me, a genuine dispute exists regarding this fact, as Defendant provides evidence of Plaintiff's acceptance of the Arbitration Agreement, and Plaintiff questions the reliability[6] of some of that evidence and provides evidence that she did not accept it. With this dispute of material fact, I cannot conclude on the record before me that the employer is entitled to arbitrate as a matter of law. Therefore, Defendant's motion to dismiss the complaint, treated as one for summary judgment, is denied. This case will proceed with discovery on the validity of the Arbitration Agreement, and I will hold a jury trial to determine this discrete matter of fact.
>
> N.6 In essence, Plaintiff challenges the authenticity of Defendant's e-signature software program and seeks discovery to determine whether the documents produced by it and relied upon by Defendant in its motion were the product of a system or process capable of producing reliable results. *See* FED. R. EVID. 901(b)(9).

*Id.* at 837-38 (internal citation omitted).

Another instructive case, *Ruiz v. Moss Bros. Auto Group, Inc.*, 232 Cal. App. 4th 836, 844, 181 Cal. Rptr. 3d 781, 788 (2014), a California Court of Appeals held that the movant-defendant did not meet its evidentiary burden to show that the non-movant-plaintiff actually agreed to the arbitration agreement via electronic signature where it did not provide evidence showing that the electronic signature was "the act of" the plaintiff. Specifically, the declarant in *Ruiz* failed to establish that the alleged electronic signature of the plaintiff was authentic, as the defendant did not make a showing that the alleged electronic signature of the plaintiff was an "act of" the plaintiff, as required by the California Uniform Electronic Transactions Act. Cali. Cal. Civ. Code §§ 1633.9 ("An electronic record

or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.") *compare* Oklahoma Uniform Electronic Transaction Act, Okla. Stat. Ann. tit. 12A, § 15-109 (same statutory language).

Here, the *Gonzales*, *Brent*, and *Ruiz* decisions establish that, at a minimum, discovery on the issue of formation of the arbitration agreement must proceed, and the issue of formation should be summarily submitted to a jury to determine if there is a valid arbitration agreement.

First, Plaintiff Arnold Declaration raises issues regarding her alleged acceptance of the MAA and the authenticity of her alleged electronic signature. Declaration of Courtnie Arnold. (Arnold Decl.). Specifically, Plaintiff Arnold avers that she:

1. Disputes ever agreeing to the MAA;
2. First recalls seeing the MAA was when it was provided to her by Counsel;
3. Remembers some electronic paperwork being required, and that when she was told to complete this paperwork, was on a computer at Genghis Grill;
4. Believes that another person finished her paperwork and signed it "Courtnie Marie Arnold;"
5. Only signs her name as "Courtnie Arnold" not "Courtnie Marie Arnold," unless the document requiring signature requests a full name, including middle name for signature; and
6. Would not have signed the MAA "Courtnie Marie Arnold."

Second, in addition to Plaintiff's Arnold's Declaration disputing that she ever electronically signed or agreed to the MAA, there are other questions of authentication that remain. Specifically, Defendants have failed to provide what program or service they use for obtaining electronic signatures, and what procedures are used by this program or software utilize to make sure that Plaintiff Arnold, and only Plaintiff Arnold could have entered a "Courtnie Marie Arnold" in to a computer and

signed with her initials – which are known to everyone who knows Plaintiff Arnold's first and last name – a simple, and easily electronically forged "CA." Further, as indicated by the topics that Plaintiff Arnold identifies, Plaintiff Arnold should be allowed discovery on what types of security protocol were in place, how the integrity of data that was stored was maintained, whether any data was altered, deleted or modified, and what other actions where allegedly taken by Courtnie Arnold, or use "carnold" such that those actions can be reviewed by Plaintiff and her Counsel to see if other actions further support Plaintiff Arnold did not agree to the MAA.

Third, while not an exhaustive list, some of the discovery into disputed issues of contract formation that is necessary for Plaintiff Arnold to prosecute this action and defend against Defendants' claims that the MAA was accepted by Plaintiff would include:

- Information regarding the reliability of the computer(s) used by Defendants as part of their e-signature software program, both at present and on June 11, 2015, the alleged date of electronic signature, to verify that no data was erroneously deleted, altered, added to, or associated with what Defendants allege was Ms. Arnold's unique user ID;

- The identity of Defendants' e-signature software program on June 11, 2015, if any, so that Plaintiff Arnold can determine if there was a program in place, and if so, whether the program was properly configured to correctly record the intended inputs;

- The identity of Defendants' current e-signature software program so that we can determine if the original software program was properly preserved for inspection for possible defects which could contaminate the intended inputs;

- The procedure(s) used by Defendants at present and on June 11, 2015 for recording data in/on the alleged "Electronic Portal" allegedly housed in servers located in Houston Texas and Austin, Texas and maintained by Defendants or some other third party that Defendants have not identified;

- The safeguards, if any, possessed by Defendants' e-signature software and associated computer hardware to ensure accuracy of information recorded and to identify and correct errors both at present and on June 11, 2015;

- The steps taken by Defendants to maintain the e-signature software and associated computer hardware since June 11, 2015;

- Evidence that the e-signature software and associated computer hardware was in working order at the time it allegedly recorded Ms. Arnold's alleged electronic signature;

- The manner in which the data contained in the Electronic Portal and servers housed in Houston, Texas and Austin, Texas which are maintained by Defendants or, potentially, and undisclosed third party with unknown data security protocols, has been stored at all times since June 11, 2015;

- If the data shown in the Electronic Portal is contained in a database, how that database was queried by Defendants to produce the results provided by Defendants, and what other results are produced by the query used, and other similar queries that were not produced and kept from Plaintiff Arnold and her Counsel;

- What, if any, other data is or, since June 11, 2015, has been stored by the Electronic Portal and the database from which the Electronic Portal gathers, collects, or otherwise organizes information and documentation;

- How the physical version of the documents provided as Exhibit 1-1 and Exhibit 1-2 provided in ECF No. 51-1 by Defendants were prepared and created;

- Any procedures governing access to the data which was used to create the Electronic Portal or associated database between June 11, 2015 and the present day;

- Access or audit records which identify each access of, and change made to, the data stored in the Electronic Portal or associated database or June 11, 2015 and the present day;

- An explanation of the categories of data contained in the Electronic Portal. This explanation should address the fact that, while Defendants maintain Plaintiff Arnold accessed and electronically signed certain documents, Plaintiff Arnold's "By:" line changes from "Courtnie Arnold" to "Courtnie Marie Arnold" in a span of nine minutes;

- A complete, unredacted and otherwise unfiltered log of all activity taken by "Portal User" "carnold;"

- How access to the database and electronic signature program is administratively controlled, which individual(s) are authorized to access the database, which individuals have the power to access the database, which individual(s) are permitted to access user data (including passwords), which individuals have the power to access user data (including passwords), which individuals can view, change, or reset user passwords, and which individual(s) have root or administrative rights to the machine(s) on which the database information, including MAAs are maintained, as well as all policies and procedures related to these matters, and any audit or compliance reports associated with these policies and procedures;

- How changes in the Electronic Portal and associated database are logged or recorded;

- A description of the audit procedures used by Defendants to ensure the integrity of the Electronic Portal, associated database, and information stored on servers in Houston Texas and Austin, Texas and maintained by Defendants or some other third party that Defendants have not identified ; and

- A description of any changes made to any records related to Plaintiff Arnold in the Electronic Portal, associated database, or those stored on servers in Houston Texas and Austin, Texas and maintained by Defendants or some other third party that Defendants have not identified, or access or viewing of any of the above, since the information or documents' creation.

This discovery is necessary when Plaintiff Arnold's Declaration, which challenges the formation of is considered. To allow Defendants to avoid discovery on the acceptance of the MAA and authenticity of Plaintiff Arnold's electronic signature essentially allows Defendants to escape having to prove the validity of the MAA and Plaintiff Arnold's electronic signature. This is especially true where an affidavit provided in another proceeding against Genghis Grill averred that two managers instructed the affiant, Brady Mitchell, to generate passwords and "[fill] out the online personnel files" for other employees. *Israsena v. Chalak-M&M AR1, LLC, et al.*, No. 4:15-CV-00038, ECF No. 39-1, Declaration of Brandy Mitchel, attached hereto as Exhibit A. Further, Declarant Mitchell made clear in her declaration, "I do not think those employees are even aware of the paperwork that I was required to sign for them." *Id.*

In light of all of the above, Defendants did not meet their burden to show, without any material factual dispute, that an arbitration was formed. Plaintiff Arnold's Declaration clearly creates issues of material fact by averring that she did not accept the terms of the MAA, that she does not recall seeing the MAA until it was provided to her by her Counsel, that Plaintiff Arnold would not have agreed to the MAA, and that Plaintiff Arnold would not have signed the MAA "Courtnie Marie Arnold." Accordingly, Defendants' Motion to Compel Arbitration should be denied without prejudice, and Plaintiff Arnold should be allowed discovery and a summary jury trial.

### B. Judicial Economy is Served By Staying Ruling on Defendants' Motion to Compel Arbitration until the Court Enters an Order on Plaintiffs' Motion for Conditional Class Certification.

Here, while Plaintiff Arnold believes that Defendants' Motion to Compel should be denied for the reasons set forth above, if the Court is inclined to grant Defendants' Motion, it should stay ruling on Defendants' Motion, in the interest of judicial economy, until after the Court enters an Order

on Plaintiffs' Motion for Conditional Class Certification. Multiple courts have found that questions of arbitrability are fact intensive and must be made on a case-by-case basis, after conditional certification *See*, Memo. In Supp. Conditional Class Certification, ECF No. 56.

## IV. CONCLUSION

In light of the above, Plaintiff Arnold respectfully requests that Defendants' Motion to Compel Arbitration, ECF No. 51, be denied without prejudice and that the issue of validity of the arbitration agreement be submitted to a jury for trial on that issue. Further, Plaintiff Arnold respectfully requests that ruling on Defendants' Motion to Compel Arbitration be stayed pending ruling on Plaintiffs' Motion for Conditional Certification for reasons of judicial economy, for the reasons discussed herein.

Respectfully submitted,

Dated: August 1, 2016

By: */s/ Brandon M. Wise*

Brandon M. Wise (admitted *pro have vice*)
THE WISE FIRM LLC
P.O. Box 701
Carlinville, IL 62626
Telephone: 217-710-1403
Email: brandon.wise@thewisefirm.com

A. Daniel Woska, OK Bar No. 9900
WoskaLawFirm, PLLC
722 N. Broadway, Mezzanine
Oklahoma City, OK 73102
Telephone: 405-657-2271
Facsimile: 405-285-7626
Email: awoska@woskalawfirm.com

Joseph C. Peiffer (admitted *pro have vice*)
PEIFFER ROSCA WOLF
ABDULLAH CARR & KANE, APLC
201 St. Charles Avenue, Suite 4610
New Orleans, LA 70170
Telephone: 504-523-2434
Facsimile: 504-523-2464
Email: jpeiffer@prwlegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2016 I electronically filed a true and accurate copy of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of this filing to all attorneys of record.